Dennis STORDAHL, Appellant,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY, Appellee.

GOVERNMENT EMPLOYEES INSURANCE COMPANY, Cross-Appellant,

v.

Dennis STORDAHL, Cross-Appellee.

Nos. 2988 and 3130.

Supreme Court of Alaska.

May 13, 1977.

Charles R. Tunley, Anchorage, for appellant and cross-appellee.

Kenneth P. Jacobus, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee and cross-appellant.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR and BURKE, Justices, and DIMOND, Justice Pro Tem.

BOOCHEVER, Chief Justice.

This case involves construction of Paragraph J of a Government Employees Insurance Company (GEICO) policy covering Dennis Stordahl for injuries caused by an "uninsured automobile." Stordahl was injured by a car owned by an uninsured motorist but driven by a person with applicable insurance. The trial court held by summary judgment that Stordahl was precluded from collecting under the policy because the driver was insured. Stordahl appeals from that decision. GEICO requests that this court affirm the summary judgment below, and in a cross-appeal, contests the denial of attorney's fees.

We affirm the trial court's interpretation of the insurance policy; however, we remand this case so that the trial court may reconsider the question of attorney's fees and set forth its reason if fees are not granted.

The facts in this case are undisputed. On June 14, 1974, Douglas Wood, a licensed driver, was teaching Debra Mounts to drive his automobile in the city of Anchorage, Alaska. Ms. Mounts had no license. Wood sat in the front seat, directing and assisting her driving. At the intersection of C Street and Dimond Boulevard, while turning left, Ms. Mounts lost control of the vehicle. The vehicle ran over appellant, Dennis Stordahl, who was stopped at the intersection on his motorcycle. Stordahl received multiple injuries. Wood was cited for permitting an unlicensed minor to drive and pled guilty to that charge.

Ms. Mounts was covered by GEICO insurance under a policy purchased by her father. GEICO paid Stordahl the amount of $50,000.00 (the amount of the policy limits) plus attorney's fees and costs for a total of $58,356.00 on behalf of Ms. Mounts in exchange for a release to GEICO. The amount paid under Ms. Mounts' policy is in

excess of Alaska's statutory minimum insurance.[1]

Stordahl had an insurance policy with GEICO for "uninsured motorists" in the amount of $15,000.00. Stordahl filed a suit against GEICO for the $15,000.00 when GEICO would not pay under the uninsured motorist policy. GEICO, in its answer, claimed that Stordahl had received $58,356.00 for damages already and that receipt of the insurance proceeds "operates as a setoff and obviates and precludes" Stordahl's further claim.

Following discovery, GEICO moved for summary judgment under the insurance policy. GEICO claimed that, as a matter of law, the "uninsured motorist" coverage was inapplicable if the driver was insured, even though the owner was not. Stordahl filed a cross-motion for summary judgment. He claimed that Woods was both independently liable in permitting Ms. Mounts to drive and vicariously liable for her acts, and that, therefore, Woods qualified as an "uninsured motorist." Stordahl also contended that the language of the policy was ambiguous and should be construed against the insurance company.

The focal point of this case is Paragraph J of the insurance policy which states:

COVERAGE J—DAMAGES FOR BODILY INJURY:

To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by the insured, caused by accident and arising out of the ownership, mainte-

nance or use of such uninsured automobile; . . .

The subsequent definitional section of Part IV provides:

"Uninsured automobile" means:

(1) An automobile with respect to the ownership, maintenance or use of which there is, in at least the amount specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury, liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile . . . . .

The trial court found that since Ms. Mounts, the driver, was insured, the vehicle was not an "uninsured automobile" under the meaning of the policy.

On appeal Stordahl claims that Paragraph J should be read to say:

If there is any person legally responsible for the use (e. g., the owner) who does not have a policy, then the vehicle is uninsured.

GEICO argues that the purpose of uninsured motorist insurance is to provide protection, only if no other recovery is available.

 The purpose of contract interpretation is to ascertain and effectuate the reasonable expectations of the parties.[2] We have noted, however, that interpretation of insurance contracts is controlled by somewhat different standards. This is due, in part, to the inequality in bargaining power and to the fact that certainty is required to ascertain rates.[3] An insurance policy may be considered a contract of adhesion,[4] and

1. See AS 28.20.440(b)(2) which provides for a minimum of $25,000.00 because of bodily injury or death to one person.

2. See *Wessells v. State*, 562 P.2d 1042 (Alaska 1977); *National Bank of Alaska v. J. B. L. & K. of Alaska, Inc.*, 546 P.2d 579, 580–86 (Alaska 1976); *Day v. A & G Constr. Co., Inc.*, 528 P.2d 440, 444 (Alaska 1974); *Hendricks v. Knik Supply, Inc.*, 522 P.2d 543, 546 (Alaska 1974). *See*

*also Smalley v. Juneau Clinic Bldg. Corp.*, 493 P.2d 1296, 1305 (Alaska 1972).

3. *Ina Life Insurance Co. v. Brundin*, 533 P.2d 236, 241 (Alaska 1975).

4. *Standard Oil Company of California v. Perkins*, 347 F.2d 379, 384 n.5 (9th Cir. 1965), states:

"Adhesion contract" is a handy shorthand descriptive of standard form printed con-

as such, should be construed to provide the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language.[5] It is not required that ambiguities be found in the policy language as a condition precedent for such construction.[6]

Keeping in mind the special considerations applicable to insurance contracts, we shall interpret the contract in this case in accordance with the method set forth in *Wessells v. State*, 562 P.2d 1042 (Alaska 1977), and in the concurring opinion to *Tsakres v. Owens*, 561 P.2d 1218 (Alaska 1977). To ascertain the reasonable expectations of the parties, we look to the language of the disputed policy provisions, the language of other provisions of the insurance policy,[7] and to relevant extrinsic evidence. In addition, we refer to case law interpreting similar provisions.

There is no Alaska case on point to assist us here. Looking to the case law of other jurisdictions, then, we note that uninsured motorist protection is a relatively new concept in insurance law, and that there is not an extremely large body of law which has been decided on this issue.[8] Those cases which have interpreted provisions relating to uninsured motorists appear to be in conflict. There is case law supporting both Stordahl's[9] and GEICO's[10] positions.

We hesitate to place too much emphasis on the law of other jurisdictions since varying fact patterns, policy terms and methods of contract interpretation make analogy difficult. Nevertheless, cases decided in the Florida District Courts of Appeal are almost directly on point and merit brief discussion.

tracts prepared by one party and submitted to the other on a "take it or leave it" basis. The law has recognized there is often no true equality of bargaining power in such contracts and has accommodated that reality in construing them. See Kessler, Contracts of Adhesion, 43 Columbia L.Rev. 629 (1943). The term "Contract of Adhesion" was introduced into legal nomenclature by Patterson, The Delivery of a Life Insurance Policy, 33 Harv.L.Rev. 198, 222 (1919).

**5.** *Ina Life, supra* at 241; *Graham v. Rockman,* 504 P.2d 1351, 1357 (Alaska 1972); *Continental Ins. Co. v. Bussell,* 498 P.2d 706, 710 (Alaska 1972); *National Indem. Co. v. Flesher,* 469 P.2d 360 (Alaska 1970). *See also Tomaiuoli v. United States Fidelity & Guar. Co.,* 75 N.J.Super 192, 182 A.2d 582, 587–88 (App.Div.1962); *Linden Motor Freight Co. v. Travelers Ins. Co.,* 40 N.J. 511, 193 A.2d 217, 224 (N.J.1963); Keeton, Insurance Law Rights at Variance with Policy Provisions, 83 Harv.L.Rev. 961, 963 (1970).

**6.** *Continental Ins. Co. v. Bussell,* 498 P.2d 706, 710 (Alaska 1972).

**7.** Contracts should not be interpreted in a manner which creates conflict among various provisions, and the court should, if possible, give effect to all parts of the instrument. *See Modern Construction, Inc. v. Barce, Inc.,* 556 P.2d 528, 530 (Alaska 1976); *McBain v. Pratt,* 514 P.2d 823, 828 (Alaska 1973); S. Williston and W. Jaeger, Williston on Contracts § 619 at 731 (3rd ed. 1961). *See also* AS 21.42.230 which provides that insurance contracts should be construed according to their entirety.

**8.** *See generally* Annot., Rights and Liabilities Under "Uninsured Motorists" Coverage, 79 A.L.R.2d 1252, 1253 (1961); 11 Am.Jur. Trials, Uninsured Motorists Claims § 2 pp. 77–79.

**9.** *Allstate Insurance Co. v. Chastain,* 251 So.2d 354 (Fla.App. 3rd Dist. 1971). *See Security National Insurance Co. v. Hand,* 31 Cal.App.2d 227, 107 Cal.Rptr. 439 (1973); *General Accident Fire & Life Assurance Corp. Ltd. v. Stasky,* 266 Or. 312, 512 P.2d 987, 989 (1973); *Harthcock v. State Farm Mutual Automobile Ins. Co.,* 248 So.2d 456 (Miss.1971); *Motorists Mutual Insurance Co. v. Tomanski,* 27 Ohio St.2d 222, 271 N.E.2d 924 (1971).

**10.** *Milling v. State Farm Fire & Casualty Co.,* 333 So.2d 511 (Fla.App. 1st Dist. 1976); *Gordon v. Phoenix Insurance Co.,* 242 So.2d 485 (Fla.App. 1st Dist. 1970). *See United States Guaranty Co. v. Byrum,* 206 Va. 815, 146 S.E.2d 246 (1966); *Southern v. Lumberman's Mutual Casualty Co.,* 236 F.Supp. 370 (W.D.Va. 1964); *Hobbs v. Buckeye Union Casualty Co.,* 212 F.Supp. 349 (W.D.Va.1962); Annot., Automobile Insurance: What Constitutes an "Uninsured" or "Unknown" Vehicle or Motorist Within Uninsured Motorist Coverage, 26 A.L.R.3rd 883, § 3 (1969); Annot., Rights and Liabilities Under "Uninsured Motorists" Coverage, 79 A.L.R.2d 1252, § 2 (1961). *Cf. Lund v. Mission Insurance Co.,* 270 Or. 461, 528 P.2d 78 (1974); *Travelers Insurance Co. v. Boucer,* 38 Cal.App.3d 992, 114 Cal.Rptr. 651 (1974).

Two separate districts in Florida, the First District [11] and the Third District,[12] have addressed fact patterns similar to that presented here and motorist insurance language which is identical. The two districts came to opposite conclusions. The First District of Florida found the language unambiguous and held that since there was applicable insurance, the uninsured motorist coverage did not apply. Disagreeing with this interpretation, the Third District of Florida found the language ambiguous and construed it in favor of the insured.

■ In addition to the case law discussed above and the disputed language, we have carefully viewed the language of the policy as a whole, and the circumstances of this accident. We agree with the trial court and the First District of Florida. In our opinion, when Stordahl purchased an uninsured motorist policy, he reasonably expected coverage only if there were no other applicable insurance to compensate him for injuries caused by an automobile. We find no extrinsic evidence which convinces us that a contrary expectation was reasonable.[13] Ms. Mounts, through her father's policy, was insured, and Stordahl received $58,356.00 from this policy. This amount is more than the minimum mandatory insurance in Alaska.[14] Thus, since the driver of the only automobile which caused Stordahl's injuries had applicable insurance,

we conclude that this case involved an "insured automobile." [15]

■ This conclusion is supported by another provision of the GEICO policy.[16] Section (b) of the limitations to uninsured motorist protection reads:

(b) Any amount payable under the terms of this Part because of bodily injury sustained in an accident by a person who is an insured under this Part shall be reduced by

(1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured automobile and (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under Coverage A, and . . . .

Under this provision, even if the $15,000.00 of uninsured motorist protection were applicable to Stordahl's case, it would be reduced to zero under limitation (b) because of the $58,356.00 paid on behalf of Ms. Mounts. No matter how we interpret Paragraph J, it appears that Stordahl would not be able to collect under his GEICO policy.

Our conclusion in this case does not indicate our approval of the wording of Paragraph J. The language employed by GEI-

11. *Milling v. State Farm Fire & Casualty Co.,* 333 So.2d 511 (Fla.App. 1st Dist. 1976); *Gordon v. Phoenix Insurance Co.,* 242 So.2d 485 (Fla.App. 1st Dist. 1970).

12. *Allstate Insurance Co. v. Chastain,* 251 So.2d 354 (Fla.App. 3rd Dist. 1971).

13. Stordahl argues that the language of the ·GEICO policy is "ambiguous." An ambiguity does not exist, however, merely because the parties disagree as to the interpretation of a term. An "ambiguity" exists only where the contract as a whole and all the extrinsic evidence support two different interpretations, both of which are reasonable. *Modern Construction, Inc. v. Barce, Inc.,* 556 P.2d 528, 529 (Alaska 1976). In this case, having viewed all of the relevant law, language and extrinsic evidence, we find that only GEICO's interpretation reflects a reasonable interpretation. Therefore, no ambiguity exists, and the rules of construing

ambiguities which are relied upon by Stordahl do not apply.

14. *See* AS 28.20.440(b)(2).

15. We do not now reach the situation where two vehicles jointly cause an injury and one is insured by either its owner or driver and one is totally uninsured. Even though there would be "applicable insurance," it is arguable that under the GEICO language, there would still be an "uninsured automobile."

16. Even if the trial court's decision as to Paragraph J were incorrect as a matter of law, this court on appeal may uphold the trial court's decision if there exist independent grounds which as a matter of law support the trial court's conclusion. *Moore v. State,* 553 P.2d 8, 20–21 (Alaska 1976); *Ransom v. Haner,* 362 P.2d 282, 285 (Alaska 1961).

CO is not a model of either clarity or form. We do not look with favor upon poorly worded language in insurance contracts, and we would urge insurers to reword policies to more clearly align the language with what we believe to be the reasonable expectations of a purchaser of uninsured motorist protection.[17] The fact that this policy could have been clearer, however, does not sway us from our opinion that the reasonable expectation of the insured under the facts of this case would not encompass recovery under Paragraph J.[18]

We turn next to GEICO's cross-appeal on the issue of attorney's fees. The trial court awarded no fees to GEICO and did not state any reason for its departure from the provisions of Civil Rule 82 which states in part:

> . . . Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount.[19]

We have consistently held that the award of costs and fees to the prevailing party is within the broad discretion of the trial court.[20] Stordahl advances various reasons why the trial court may not have awarded attorney's fees. Regardless of the validity of these reasons, we do not consider Stordahl's arguments here for it is impossible to tell whether the trial court based its decision on these or some other undisclosed grounds. In *Patrick v. Sedwick,* 413 P.2d 169, 178–79 (Alaska 1966), this court held that when a party recovers a money judgment in a contested litigation, the trial court should state its reasons for departing from the fee schedule of Civil Rule 82(a).

In this case, the prevailing party was awarded no money judgment, and the fee schedule was therefore inapplicable. To permit this court to determine whether an abuse of discretion has occurred, we extend the rationale of *Patrick v. Sedwick, supra,* to this situation and hold that where the trial court does not award attorney's fees to a prevailing party, it must state the basis for its decision.

The trial court's opinion is affirmed as to the interpretation of the GEICO policy but remanded on the issue of attorney's fees so that the trial court may reconsider that issue. If attorney's fees are not awarded, the court should fully state its reasons.

---

**17.** Under AS 21.42.120, all insurance contracts must be filed with and approved by the Director of Insurance. Under AS 21.42.130(2), the Director of Insurance "shall disapprove" a form which is "misleading." While we do not find the language of this policy ambiguous from a technical standpoint, we would urge the Director of Insurance to encourage the use of clearer language in all policies, both to assist the insured in purchasing insurance and to avoid the necessity of litigation in our courts.

**18.** GEICO is fortunate in that no extrinsic evidence appears to indicate that Stordahl had a reasonable expectation of coverage where the driver is insured. It is conceivable, however, that in a different case, extrinsic evidence might exist which could render the identical GEICO language ambiguous.

**19.** Civil Rule 82(a) provides in full:

(a) *Allowance to Prevailing Party as Costs.*

(1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein, as part of the costs of the action allowed by law:

ATTORNEY'S FEES IN AVERAGE CASES

| | Contested | Without Trial | Non-Contested |
|---|---|---|---|
| First $2,000 | 25% | 20% | 15% |
| Next $3,000 | 20% | 15% | 12.5% |
| Next $5,000 | 15% | 12.5% | 10% |
| Over $10,000 | 10% | 7.5% | 5% |

Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount.

(2) In actions where the money judgment is not an accurate criteria for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with the amount and value of legal services rendered.

(3) The allowance of attorney's fees by the court in conformance with the foregoing schedule is not to be construed as fixing the fees between attorney and client.

**20.** *Adoption of V.M.C.,* 528 P.2d 788, 795 n.13 (Alaska 1974).

The decision of the trial court is accordingly,

AFFIRMED IN PART, REMANDED IN PART.

ERWIN, J., not participating.