Rodney T. DeCRISTOFARO, Appellant,

v.

SECURITY NATIONAL BANK, A National Banking Association, Appellee.

No. 6088.

Supreme Court of Alaska.

May 27, 1983.

William K. Walker, Anchorage, for appellant.

William F. Meese, Dickson, Evans & Esch, Anchorage, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

OPINION

RABINOWITZ, Justice.

In an action for breach of a non-competition clause of an employment contract, employee DeCristofaro appeals from an order granting summary judgment to his former employer.

Security National Bank (SNB) hired Rodney DeCristofaro in June of 1979 pursuant to an employment contract which contained the following clause:

NON–COMPETITION. In the event De-CRISTOFARO voluntarily terminates his services as Assistant Vice-President of SECURITY in breach of this Agreement during the two (2) year period set forth in Paragraph "1", then for a period of nine (9) months after such termination, De-CRISTOFARO shall not engage in the banking business, either individually or as an officer, employee or controlling shareholder of any bank in the State of Alaska. Because of the difficulty of determining damages for a breach of this non-competitive clause, it is agreed that the damages shall be the unamortized relocation expense plus the unamortized placement fee paid to Foust, Dier, and Associates upon his hire.

In March of 1980, DeCristofaro voluntarily terminated his employment with SNB, and within nine months he went to work for the Alaska Commercial Fishing and Agriculture Bank (CFAB). Thereafter, SNB filed suit in the superior court. In its complaint, SNB averred that DeCristofaro breached the terms of the non-competition clause in taking up employment with CFAB and sought liquidated damages under the clause.

SNB subsequently moved for summary judgment. In opposition, DeCristofaro argued that CFAB was not a "bank" for purposes of the non-competition clause and that he was not engaged in the "banking business" within the meaning of the clause.

DeCristofaro submitted his own affidavit and the affidavit of SNB's former president, Wayne Littleton, who had signed the employment contract on behalf of SNB. Both claimed that they understood the clause to apply only to full-service commercial banks and that the purpose of the clause was to prevent SNB from losing its deposits and depositors to other banks upon DeCristofaro's departure. In reply, SNB submitted the affidavit of its current president indicating that the clause was intended to apply to all of SNB's competitors, that the purpose of the clause was to prevent key personnel from taking SNB business to competitors, and that CFAB was a competitor.

It is uncontested that CFAB is not a full-service commercial bank and that it competes with SNB only in certain limited areas. CFAB is state-funded and has no depositors, and hence does not compete with SNB for deposits or offer the myriad customer services of the typical commercial bank. CFAB, however, does compete with SNB in the market for commercial fishing and agricultural loans.

The superior court granted summary judgment in favor of SNB and awarded SNB liquidated damages in the amount of $13,244.41. DeCristofaro appeals.

### I.

■ In contract interpretation cases, we have held that summary judgment is inappropriate where there remains a question of the parties' expressed intentions. *Hazell v. Richards,* 659 P.2d 575, 577 n. 3 (Alaska 1983); *Peterson v. Wirum,* 625 P.2d 866, 869–70 (Alaska 1981); *Kincaid v. Kingham,* 559 P.2d 1044, 1047 (Alaska 1977); *Smalley*

*v. Juneau Clinic Building Corp.,* 493 P.2d 1296, 1305 (Alaska 1972).[1] Summary judgment is improper if the evidence before the superior court indicates that "a factual dispute exists as to the expressed intent of the parties . . . ." *Peterson,* 625 P.2d at 870.

■ We hold that the affidavit of SNB's former president, Wayne Littleton, submitted by DeCristofaro in opposition to SNB's motion for summary judgment, established the existence of a question of material fact. Littleton stated that the language of the non-competition clause

> was intended to apply to employment by or at a full-service, commercial banking institution, such as the First National Bank of Anchorage, National Bank of Alaska, United Bank Alaska, etc. That language was not intended to cover or apply to employment of Mr. DeCristofaro at a bank-like institution or "financial agency" except a full-service, commercial banking institution.

Although at trial the impact of Littleton's testimony might be reduced, either through the introduction of other evidence or through cross-examination,[2] we must at this time draw factual inferences in favor of DeCristofaro, against whom summary judgment was granted. *Stanfill v. City of Fairbanks,* 659 P.2d 579 (Alaska 1983); *Swenson Trucking & Excavating v. Truckweld Equipment Co.,* 604 P.2d 1113, 1116 (Alaska 1980). Under that standard, we hold that it was error for the superior court to grant SNB's motion for summary judgment.

■ We note two additional principles which support our holding that the non-competition clause in this case cannot be construed as a matter of law in the manner urged by SNB. First, non-competition agreements are disfavored in the law as

---

1. Upon review of a trial court's decision pertaining to a contract, the interpretation of words is ordinarily held to be a matter for the court, while resolution of a dispute as to the surrounding circumstances is for the trier of facts.

   *Day v. A & G Construction Co.,* 528 P.2d 440, 443 (Alaska 1974) (footnote omitted). Stated otherwise, while the interpretation of a writing is a task for the court, where the interpretation turns upon the acceptance of extrinsic evi-

dence, the process of weighing the evidence is for the trier of fact. *Alyeska Pipeline Service Co. v. O'Kelley,* 645 P.2d 767, 771 n. 2 (Alaska 1982).

2. This possibility, taken together with the contrary evidence of intent which was introduced by SNB precludes entry of summary judgment in DeCristofaro's favor on the question of the meaning of the contract in the present posture of the case.

restraints upon trade and because they impose hardships upon individuals seeking to earn a livelihood. They are, therefore, strictly construed. *Barnes Group, Inc. v. Harper*, 653 F.2d 175, 179 (5th Cir.1981), *cert. denied*, 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982) (applying Georgia law); *Gagliardi Bros., Inc. v. Caputo*, 538 F.Supp. 525, 529 (E.D.Pa.1982); *Roth v. Gamble-Skogmo, Inc.*, 532 F.Supp. 1029, 1031 (D.Minn.1982); *American Broadcasting Companies v. Wolf*, 52 N.Y.2d 394, 438 N.Y. S.2d 482, 486–87, 420 N.E.2d 363, 367–68 (N.Y.1981) ("There is, in short, general judicial disfavor of anticompetitive covenants contained in employment contracts."). *See also* Restatement (Second) of Contracts § 188 comment g (1982). Second, in the absence of other means of ascertaining the reasonable expectations of the parties, we have held that ambiguities in contractual language are to be construed against the drafter. *See Duncan v. City of Fairbanks*, 567 P.2d 311, 313–14 (Alaska 1977); *Modern Construction, Inc. v. Barce, Inc.*, 556 P.2d 528, 530 (Alaska 1976). In this case, it appears that the contractual language was supplied by the bank.

For the reasons stated, the judgment of the superior court is REVERSED and REMANDED.[3]

---

**3.** We do not consider DeCristofaro's claim that the non-competition clause is unenforceable as an unreasonable restraint of trade because that claim was not raised before the trial court. It therefore has been waived for purposes of this appeal. *University of Anchorage v. Simpson Building Supply Co.*, 530 P.2d 1317, 1324 (Alaska 1975); *Moran v. Holman*, 501 P.2d 769, 770 n. 1 (Alaska 1972).